# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| EMI APRIL MUSIC, INC., *et al.*, | |
| Plaintiffs, | Case No. 2:10-CV-00381-KJD-GWF |
| v. | **ORDER** |
| KAMAL KESHMIRI, *et al.*, | |
| Defendants. | |

Before the Court is Plaintiffs' Motion for Leave to Amend Complaint (#62). Defendants have filed a response in opposition (#65), and Plaintiffs have filed a reply (#68). Also before the Court is Plaintiff's Motion for Partial Summary Judgment (#58). Defendants have filed a response in opposition (#63), and Plaintiffs have filed a reply (#66).

I. Background

Plaintiffs are the owners of copyrights in four popular songs: "Renegade," "Little Red Corvette," "Mercedes Boy," and "You Shook Me All Night Long." Plaintiffs are also members of the American Society of Composers, Authors, and Publishers ("ASCAP"). As members of ASCAP, Plaintiffs have the non-exclusive right to license non-dramatic public performances of their copyrighted musical compositions. ASCAP itself also has the right to license such performances. Accordingly, when others wish to perform the songs of Plaintiffs and other ASCAP members, they

typically seek a blanket ASCAP license. A blanket ASCAP licence authorizes the performance of all songs in the ASCAP repertory.

Defendants Kamal Keshmiri and Jamal "Jamy" Keshmiri are the sole managing members of Discopolus, LLC ("Discopolus"), which owns and operates the Wild Orchid, an adult cabaret in Reno, Nevada. Kamal handles most of the business operation and management of the Wild Orchid, but both brothers derive a financial benefit from the business. The Wild Orchid features dance performances set to music. Typically, the dancers, hired to work as independent contractors, create their own routines and select their own songs. These song selections are given to the Wild Orchid's disc jockey just before the performances begin, and the disc jockey plays them over the Wild Orchid's sound system.

Defendants are not members of ASCAP and do not have a blanket ASCAP license. In 1998, ASCAP began to suspect that Defendants were unlawfully allowing the performance of ASCAP music at the Wild Orchid. ASCAP attempted to get Defendants to pay for and obtain an ASCAP license. In response, Defendants did not purchase an ASCAP license, but did require all dancers to sign warranties in which they state that they have the legal authority to play the songs they select. Defendants also posted signs throughout the establishment that read, "ASCAP MUSIC NOT ALLOWED ON THESE PREMISES."

On March 30, 2007 and on May 20, 2010, ASCAP sent Kevin McDonough, an independent investigator, to the Wild Orchid to perform an on-site investigation of the music being played. McDonough is an experienced musician who was involved in public performances of popular songs for 20 years. During his two visits to the Wild Orchid, McDonough identified the four copyrighted songs listed above.

Plaintiffs ultimately brought this action against the individual Defendants for copyright infringement. Plaintiffs assert that at the time they filed the complaint they possessed conflicting information as to the proper business entity responsible for control and ownership of the Wild Orchid. As a result, Discopolus is not a defendant in this matter. Plaintiffs now ask the Court to grant

them leave to amend their complaint to add Discopolus as a defendant. Plaintiffs further seek partial summary judgment on the issues of Defendant's liability, injunctive relief, and their costs and attorneys' fees.

II. Motion for Leave to Amend Complaint to Add Discopolus, LLC as a Defendant

    A. Legal Standard

A party is allowed to amend a pleading once as a matter of course, but thereafter "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Generally, however, "[t]he Court should freely give leave when justice so requires." Id. In determining whether to give leave, the Court considers a number of factors, including whether there was undue delay in filing the motion and whether allowing the motion would cause undue prejudice to the opposing party. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Absent prejudice, or a strong showing of undue delay, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Id. (emphasis in original).

    B. Undue Delay

Defendants first argue that there was undue delay. In evaluating undue delay, the question is "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990).

Defendants assert that Plaintiffs had knowledge that Discopolus was the proper defendant in April 2010, when Defendants identified themselves in a motion to dismiss as "brothers who are shareholders of a Nevada Corporation named DISCOPOLUS, LLC d/b/a Wild Orchid." (#8-1). Additionally, in May 2011, Defendants responded to Plaintiffs' interrogatories by referring specifically to "Discopolus Limited-Liability Company." Since April 2010, Plaintiffs have amended their complaint twice, each time declining to add Discopolus. Defendants argue that because

Plaintiffs have known or should have known that Discopolus was the proper defendant since 2010, they should not now be allowed to amend their complaint.

Plaintiffs argue that Defendants have presented inconsistent information. For example, the April 2010 motion refers to both a limited liability company and a corporation, which are distinct business structures. Likewise, certain documents did not refer to Discopolus at all, but referred instead to the "Keshmiri Entertainment Group." It was not until Kamal Keshmiri's deposition in February 2012 that Defendants finally clarified Discopolus's legal name, structure, and ownership status. Plaintiffs could not be expected to know the necessary facts to include Discopolus in their previous pleadings. Plaintiffs filed this motion two months after Kamal's deposition. This time span falls short of the required "strong showing" of undue delay.

C. Undue Prejudice

Defendants further argue that granting the motion would cause them undue prejudice. Of all the factors the Court considers when determining whether to grant a motion to amend, "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence, 316 F.3d at 1052. In determining whether undue prejudice exists, the Court looks at a number of factors, including whether the changes would alter the plaintiff's legal theory, add claims, or require the parties to engage in further discovery. See Kaplan v. Rose, 49 F.3d 1363, 1369-70 (9th Cir. 1994)

Defendants assert that amending the complaint to add Discopolus, LLC would force the parties to "open up discovery and re-do the entire process." However Discopolus is a limited liability company comprised of the two Defendants already involved in the litigation. Plaintiffs' theory of vicarious liability applies to Discopolus in the same way it applies to Kamal and Jamy. Plaintiff asserts no new claims or theories, and there will be little or no need for additional discovery.

Additionally, Kamal and Jamy have actually urged Plaintiffs to substitute Discopolus for the individual Defendants throughout the litigation. It is inconsistent for Defendants to now attempt to block Discopolus from being added. Accordingly, the Plaintiffs' motion for leave to amend the complaint to add Discopolus, LLC as a Defendant is granted.

4

III. Motion for Partial Summary Judgment

The Court has granted Plaintiffs' motion for leave to amend. Accordingly, the Court includes Discopolus as a Defendant in Plaintiffs' motion for partial summary judgment.

A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

5

1   Summary judgment shall be entered "against a party who fails to make a showing sufficient
2   to establish the existence of an element essential to that party's case, and on which that party will
3   bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted
4   if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

### B. Defendant Liability

#### 1. Direct Infringement

To establish direct copyright infringement, a plaintiff must prove two things: that it owns a valid copyright, and that an original element of the copyrighted work was copied. Range Road Music, Inc. v. East Coast Foods, Inc., 668 F.3d 1148, 1153 (9th Cir. 2012). A work has been "copied" when any of the copyright owner's exclusive rights, including "the right to perform the copyrighted work publicly," has been infringed. Id. at 1153-54 (citing S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081 1085 n. 3 (9th Cir. 1989)).

No performers are party to this action. However, Plaintiffs' theory of liability is contingent on a finding of direct infringement. Plaintiffs offer copies of copyright registration certificates as evidence to show they are the owners of valid copyrights, and they provide an investigator's affidavit to show that the songs were unlawfully performed at the Wild Orchid. Defendants argue that some of the performers may have had licenses to some of the songs. However, this contention is uncorroborated and self-serving. Defendants offer no evidence to show that any of the performers have ever owned a license to perform any of the songs in question. Accordingly, this Court finds that Plaintiffs' copyrights were directly infringed by performers at the Wild Orchid.

#### 2. Vicarious Liability of Defendants

When a defendant himself is not the direct infringer, he may still be liable for copyright infringement under a secondary liability theory. See MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). Under these theories, a defendant can be liable for copyright infringement either contributory or vicariously. See MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005). Though these two theories of liability may often overlap, the general guideline is that "contributory

6

1  liability is based on the defendant's failure to stop its own actions which facilitate third-party
2  infringement, while vicarious liability is based on the defendant's failure to cause a third party to
3  stop its directly infringing activities." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1175 (9th
4  Cir. 2007).

5  In order for a plaintiff to succeed on a vicarious liability theory, it "must establish that the
6  defendant exercises the requisite control over the direct infringer and that the defendant derives a
7  direct financial benefit from the direct infringement." Id. at 1173. Whether or not a defendant
8  exercises requisite control over the direct infringer depends on whether he has "both a legal right to
9  stop or limit the directly infringing conduct, as well as the practical ability to do so." Id. This requires
10 looking at the defendant's ability to exercise managerial authority over the establishment, his power
11 to hire and fire employees, and his ability to prevent performers from appearing at the establishment.
12 Range Road Music, Inc. v. East Coast Foods, Inc., 668 F.3d 1148, 1155 (9th Cir. 2012).

13 It is undisputed that Defendants derived a financial benefit from the operation of the Wild
14 Orchid. Plaintiffs provide evidence that the Defendants exercised the requisite control over the
15 dancers. Kamal's deposition testimony shows that all Defendants had the ability to exercise
16 managerial authority over the establishment, to hire and fire employees, and to prevent dancers from
17 performing at the Wild Orchid. This, Plaintiffs argue, is sufficient to find all Defendants vicariously
18 liable.

19 Defendants claim they did not exercise requisite control over the establishment. Defendants
20 argue that they have taken all practical steps to "stop or limit" the infringing conduct by requiring
21 dancers to sign waivers and by placing signs around the establishment that read, "ASCAP MUSIC
22 NOT ALLOWED ON THESE PREMISES." Defendants assert that monitoring the song selections
23 of every dancer is totally impractical and nearly impossible. According to Defendants, a dancer must
24 have the freedom to select a song at a moment's notice so that her performance is appropriate for the
25 mood of the crowd, and that performing the laborious and time-consuming task of checking each
26 song prior to performance is incompatible with the way songs must be performed. Defendants argue

that waivers and notices are the only practical means to stop or limit the infringing conduct, and that they do not possess requisite control to take any other action against copyright infringement.

### a. Kamal Keshmiri and Discopolus

The evidence shows that Kamal Keshmiri and Discopolus, LLC, exercised requisite control. It is undisputed that Kamal and Discopolus have the ability to exercise managerial authority over the establishment, hire and fire employees, and prevent performers from appearing at the establishment. Defendants have shown no evidence that the waivers and signs actually led to any decrease in the number of performances of ASCAP songs or that signs and waivers are the only effective means of stopping or limiting infringing conduct. Defendants have shown no record of any dancer ever being warned or fired after violating the waiver and performing an ASCAP song, or of any attempt to educate performers on copyright law. Defendants have not shown that they have made a sincere effort to check the copyright status of any of the songs performed. Essentially, Defendants' complaint is that it is too bothersome to ensure that performers comply with copyright law. This is insufficient to defeat summary judgment. Accordingly, the Court finds that Kamal Keshmiri and Discopolus, LLC did exercise requisite control over the establishment.

### b. Jamy Keshmiri

Defendants argue that even if Kamal Keshmiri and Discopolus, LLC exercised requisite control over the establishment, Jamy Keshmiri did not. In his deposition, Jamy testified that he is still a part owner of Discopolus, but has handed over all operations responsibilities to his brother, and now spends most of his time as the owner and operator of a separate business. This statement conflicts with Kamal's statement regarding Jamy's ability to manage, hire and fire employees, or prevent performers from appearing. Accordingly, there is an issue of material fact about whether Jamy exercised requisite control and can be held vicariously liable for the direct copyright infringement of the Wild Orchid's dancers. Accordingly, summary judgment is not granted against Jamy.

### 3. Independent Contractor Status

A defendant can be held vicariously liable for the direct infringement of a disc jockey who plays copyrighted songs when the defendant employs the disc jockey and the songs are played over the defendant's sound system. See Ranger Road Music, Inc. v. East Coast Foods, Inc., 668 F.3d 1148 (9th Cir. 2012). Defendants argue that they cannot be liable for the conduct of their dancers, who work at the Wild Orchid as independent contractors. This defense fails because Defendants employed the disc jockey who actually played the music over the Wild Orchid's sound system.

### 4. Notice

Lacking knowledge of what songs are copyrighted and licensed by ASCAP is not a defense to copyright infringement. Southern Nights Music Co. v. Moses, 669 F. Supp. 305, 306 (C.D. Cal. 1987). Defendants argue that they cannot be liable because they had no notice that the songs performed were infringing on ASCAP member copyrights. Given that notice is not a defense to liability, this argument fails.

### 5. Means of Infringement

When a defendant does nothing more than provide the means whereby a third party is able to infringe upon a copyright, the defendant cannot be held vicariously liable. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417 (1984). Defendants argue that by providing a stage and a sound system, they merely provided dancers with a means of infringement, and therefore cannot be liable. Defendants have actually done more than merely provide the means of infringement. Defendants participated in the infringement vicariously through their own disc jockey, profited directly from the performances in question, and exercised the ability to determine who performs at the Wild Orchid. Accordingly, the "means of infringement" defense is not sufficient to avoid liability.

### 6. Conclusion

There is no dispute that Plaintiffs own valid copyrights in the four songs in question, that those copyrights were infringed upon when the songs were performed at the Wild Orchid, and that

Kamal Keshmiri and Discopolus, LLC are vicariously liable for that direct infringement because they derive financial benefit from and exercise requisite control over such performances. There is a question of fact about whether Defendant Jamy Keshmiri exercised requisite control of the Wild Orchid, and therefore, the Court cannot hold that he is vicariously liable for the direct infringement of the Wild Orchid's dancers. Accordingly, Plaintiffs' motion for partial summary judgment is granted against Kamal Keshmiri and Discopolus, LLC on the issue of liability and is denied against Jamy Keshmiri.

IV. Relief and Attorneys Fees

    A. Injunctive Relief

The Copyright Act authorizes courts to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). An injunction does not automatically follow a determination that a copyright has been infringed. Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 980 (9th Cir. Cal. 2011) Rather, the propriety of injunctive relief in cases arising under the Copyright Act must be evaluated according to traditional equitable principles. Using these principles, a party seeking an injunction must show "(1) that he is likely to succeed [or has succeeded] on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Id. at 979 (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)); see Perfect 10, 653 F.3d at 981. "In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion. And courts have tended to issue injunctions in this context." Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010) (internal citations omitted)).

Plaintiffs have already succeeded on the merits against two of the three Defendants. Plaintiffs have shown that Defendants have failed to take action that would stop or limit the performance of Plaintiffs' copyrighted works, even during the course of this litigation. Absent an injunction, it is likely that unlawful performances of Plaintiffs' works will continue, causing irreparable harm to

Plaintiffs. The Court finds that the balance of equities tips in Plaintiffs' favor. Granting an injunction will help avoid future litigation between the parties and will not unduly burden Defendants. An injunction will simply require Defendants to obey copyright law. Finally, an injunction is in the public interest because it helps uphold copyright law.

Accordingly, Plaintiffs' request for injunctive relief is granted against Defendants Kamal Keshmiri and Discopolus, LLC. Plaintiffs are ordered to draft a proposed injunctive order and submit it to the Court by December 10, 2012.

V. Issues Remaining

An issue of fact remains about Defendant Jamy Keshmiri's vicarious liability, specifically whether he exercised requisite control over the Wild Orchid. Further, the parties have not presented evidence sufficient for summary judgment on the issue of damages, including costs and attorneys' fees. Defendants have made a demand for jury trial, and thus are entitled to a jury trial for the determination of these issues.

VI. Conclusion

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint (#62) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (#58) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs draft a proposed injunctive order and submit it to the Court by December 10, 2012.

DATED this 27th day of November 2012.

_____
Kent J. Dawson
United States District Judge